IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

TODD NEIL HOLTZMAN,

    Plaintiff,

v.                                       CIVIL NO.: WDQ-10-1945

CORRECTIONAL MEDICAL SERVICES,
et al.,

    Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MEMORANDUM OPINION

Todd Neil Holtzman sued Dr. Isaias Tessema, former Warden Bobby P. Shearin, Correct RX Pharmacy, and Correctional Medical Services, Inc. ("CMS") (collectively, the "defendants") under 42 U.S.C. § 1983 for denial of medical care.[1] For the following reasons, the complaint against Correct RX Pharmacy will be dismissed, and the unopposed Dr. Tessema motion for summary judgment and the unopposed Shearin and CMS motions to dismiss will be granted.

I.     Background[2]

Holtzman was a Maryland Department of Correction inmate housed at the Western Correctional Institution ("WCI") in Cumberland, Maryland. Compl. 2.[3] At WCI, medical

---

[1] No hearing is necessary. *See* Local Rule 105.6 (Md. 2010).

[2] For the motions to dismiss, the well-pled allegations in Holtzman's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In reviewing the motions for summary judgment, Holtzman's evidence "is to be believed, and all justifiable inferences are to be drawn in [his] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[3] He is now confined at the Maryland Correctional Training Center in Hagerstown, Maryland. Compl. 2.

services are provided by CMS, a private contractor. ECF No. 19 at 3. Correct RX Pharmacy is a pharmaceutical corporation that has contracted with WCI to fill prescriptions for inmates. *See* Compl. 2; *Outlaw v. Corr. Med. Servs.*, No. DKC-09-1704, 2010 WL 481353, at *3 n.5 (D. Md. Feb. 5, 2010). From July 2005 to April 2008, Dr. Tessema was CMS's Cumberland Regional Medical Director. Tessema Aff. ¶ 1. Shearin is the former WCI Warden. ECF No. 23 at 1 & n.1.

Holtzman has Type II Diabetes. Compl. 3. Throughout 2007, Holtzman's blood tests indicated that his diabetes was under control. Tessema Aff. ¶ 20; *see, e.g.*, ECF No. 19, Ex. B [hereinafter Medical File] at 110. At WCI, Holtzman took Glucotrol and Glucophage for his diabetes. *See* Compl. 5–6; ECF No. 19 at 16–17. A WCI psychiatrist also prescribed for him Tegretol, an anti-epileptic medication that may be used for nerve pain. *Id.* at 17 & n.8; Tessema Aff. ¶ 21.

In March 2007, Holtzman developed a left great toe infection. *See* Compl. 3. On April 19, 2007, Holtzman submitted a sick call request complaining about his toe. Medical File 13. It was discolored, pus-filled, and painful. Compl. 4–5. Holtzman could not wear a shoe or walk easily. *Id.* Because Holtzman is diabetic, he feared that toe amputation might be required if the infection was untreated. *See id.* at 3. On April 30, 2007, a nurse evaluated Holtzman and noted that his toe was red, and the nail was sore and broken. Medical File 14.

On May 5, 2007, Holtzman filed an administrative remedy procedure ("ARP") complaint about his toe. Compl. 5. On May 11, 2007, Nurse Practitioner Anna Hammond diagnosed Holtzman with paronychia[4] of the toe. Medical File 19. Holtzman's toe remained tender, and Hammond prescribed doxycycline, an oral antibiotic, and bacitracin ointment. *Id.*; Tessema Aff.

---

[4] A skin infection around the nail. Tessema Aff. 3 n.1.

¶ 6. On May 15, 2007, Holtzman was given a basin and Epsom salts so that he could soak his toe for two weeks. Medical File 23.

On May 22, 2007, the Warden's Office dismissed the May 5, 2007 ARP complaint. Compl. 5; ECF No. 23, Ex. 3 at 12–14. The investigator noted that Holtzman had been receiving treatment and was scheduled for a follow-up, and told him to submit sick call requests regarding further complaints. *Id.*

On May 25, 2007, Holtzman complained to Hammond that his toe was sore, and the broken nail was becoming ingrown. Medical File 29. Hammond noted that Dr. Tessema would schedule a toenail removal. *Id.*

On June 1, 2007, Dr. Tessema ordered that Holtzman's toenail be removed by David Carkin, a physician's assistant. *Id.* at 32; Tessema Aff. ¶ 7.

On June 18, 2007, Holtzman was prescribed Keflex, an antibiotic, for his toe. Medical File 37; Tessema Aff. ¶ 8. On June 22, 2007, Hammond noted that the Keflex had helped, and taught Holtzman how to prevent recurrence of the ingrown toenail. *Id.*; Medical File 39.

On July 4, 2007, Holtzman submitted a sick call request complaining about his toe. *Id.* at 40. On July 11, 2007, Dr. Tessema evaluated Holtzman and renewed his ointment prescriptions. *Id.* at 43.

On July 24, 2007, Holtzman filed an ARP complaint stating that he had not received his "diabetic pills" from July 19–22, 2007. ECF No. 23, Ex. 6 at 12. On August 8, 2007, David C. Donovan, MD, a physician from the Prisoner Rights Information System of Maryland, Inc., reviewed Holtzman's medical file and found that his diabetes management had been "highly erratic." Compl. 6; *id.*, Ex. C at 2.

On August 15, 2007, Carkin performed a wedge excision[5] of Holtzman's ingrown toenail. Medical File 48.

On August 19, 2007, upon investigation, the Warden's Office found that Holtzman's July 24, 2007 ARP complaint was meritorious in part. ECF No. 23, Ex. 6 at 10. Holtzman's medical file established that he had received all morning Glucotrol and Glucophage doses from July 19–22, 2007, and evening doses on July 20, 2007. *Id.*; Medical File 121. However, he had not received his Tegretol on July 19 and 20, 2007 because the pharmacy had not re-ordered the medication. ECF No. 23, Ex. 6 at 10. The Warden's Office noted that the pharmacy would keep a supply of Tegretol to avoid future delays when re-ordering. *Id.*

On August 28, 2007, Holtzman submitted a sick call request complaining that his toe remained infected. Medical File 50. The next day, Hammond prescribed doxycycline and referred Holtzman to Carkin for toenail removal. *Id.* at 51.

On September 1, 2007, Carkin evaluated Holtzman and noted that the area around the wedge excision--which had appeared healthy after the procedure--now appeared infected. *Id.* at 54. Carkin ordered saline soaks several times a day and a ten-day course of Bactrim, an antibiotic. *Id.* Holtzman was told to take the doxycycline and Bactrim simultaneously. Tessema Aff. ¶ 12. On September 5, 2007, Dr. Tessema evaluated Holtzman and noted that his toe was healing. Medical File 57.

On September 10, 2007, Dr. Tessema and Carkin discovered that Holtzman had not been taking the doxycycline and Bactrim together. *Id.* at 58. Dr. Tessema ordered Holtzman's cell to be inspected, which revealed the unused doxycycline. *Id.* Holtzman was taught how to take the medications simultaneously. *See* Tessema Aff. ¶ 12.

---

[5] In this procedure, "a strip or wedge of the toenail is removed." Tessema Aff. 5 n.2.

On September 21, 2007, Hammond scheduled the removal of Holtzman's toenail on September 27, 2007. Medical File 61. On September 26, 2007, Carkin evaluated Holtzman, who said that his toe felt "great" and denied pain, drainage, or redness. *Id.* at 64. Carkin noted that Holtzman's toenail was healing. *Id.*

On November 3, 2007, Holtzman submitted a sick call request complaining about his toe. *Id.* at 70. On November 9, 2007, Carkin noted that Holtzman's toe was red, tender, and "spongy." Tessema Aff. ¶ 14; Medical File 71. Carkin discussed toenail removal with Holtzman, and prescribed Bactrim until the removal. *Id.*

On November 29, 2007, Carkin removed Holtzman's toenail. *Id.* at 78. Holtzman asserts that he was to receive new bandages within 48 hours, but did not. Compl. 8. On November 30, 2007, Holtzman submitted a sick call request for a dressings change. Medical File 80. On December 3, 2007, a nurse changed Holtzman's bandages. *Id.* After that, Holtzman was able to change his dressings. *Id.* at 82; Tessema Aff. ¶ 15. On December 10, 2007, Carkin evaluated Holtzman and noted that his toe was healing well. *Id.* at 83. From December 2007 to January 2008, nurses evaluated Holtzman's toe weekly. *Id.* at 81; Tessema Aff. ¶ 15.

On February 27, 2008, Holtzman complained that his toe was becoming re-infected. Medical File 90. On March 3, 14, and 18, 2008, Holtzman was examined by nurses and given medication. *Id.* at 91–93. On March 20, 2008, Dr. Tessema examined Holtzman's toe and noted that there was no inflammation, tenderness, or sign of infection. *Id.* at 94.

Holtzman asserts that his toe is numb and cold, and he "is beginning to think irreparable nerve damage has occurred." Compl. 8.

On July 16, 2010, Holtzman filed a *pro se* complaint against Dr. Tessema, Correct RX Pharmacy, and CMS under 42 U.S.C. § 1983 for denial of medical care. Correct RX Pharmacy

was never served. On August 17, 2010, Holtzman filed a supplemental complaint against Shearin. On September 29, 2010, Shearin was named a defendant.

On January 21, 2011, Dr. Tessema and CMS moved to dismiss or, in the alternative, for summary judgment. ECF No. 19. On February 25, 2011, Shearin moved to dismiss or, in the alternative, for summary judgment. ECF No. 23. Although Holtzman was offered the opportunity to oppose the motions, *see* ECF No. 24, he did not.

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. The Court should "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

If the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, it treats the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[6] In considering the motion, "the judge's function is not . .

---

[6] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . .

. to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Denial of Medical Care Claims

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish an Eighth Amendment claim for the denial of medical care, a plaintiff must demonstrate that the defendant's act or omission was a "deliberate indifference to [a] serious medical need." *Id.* at 106. An official acts with deliberate indifference when he actually knows about and ignores "a substantial risk of serious injury to the detainee or [a] detainee's serious need for medical care." *Young v. City of Mount Ranier*, 238 F.3d 567, 576–77 (4th Cir. 2001) (*citing Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The medical provider's treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Unless there are "exceptional" circumstances, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim."

---

to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

*Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Mere negligence or malpractice is also insufficient. *See Miltier*, 896 F.2d at 852. A plaintiff may bring a civil action to redress an Eighth Amendment violation under 42 U.S.C. § 1983.

To state a § 1983 claim, the plaintiff must allege that the defendant (1) "acted personally in the deprivation of [his] rights," or (2) is culpable under supervisory liability. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory defendants may be held liable under § 1983 if they (1) "failed promptly to provide an inmate with needed medical care," (2) "deliberately interfered with the prison doctors' performance," or (3) "tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Miltier*, 896 F.2d at 854.

The *respondeat superior* doctrine generally does not apply to § 1983 cases. *Baker v. Lyles*, 904 F.2d 925, 929 (4th Cir. 1990). Thus, private corporations may not be held liable under § 1983 on this basis for their employees' actions. *Rodriguez v. Smithfield Packing Co.*, 338 F.3d 348, 355 (4th Cir. 2003).

1. The Complaint Against Correct RX Pharmacy Will Be Dismissed

Holtzman alleges that he filed a July 24, 2007 ARP complaint stating that he had not received his "diabetic pills"--Glucotrol and Glucophage--or Tegretol from July 19–22, 2007. *See* Compl. 5–6. He alleges that Correct RX Pharmacy "does [not] send the medications on time." *Id.* at 8.

Correct RX Pharmacy was never served. Further, Holtzman's medical file establishes that he received all morning doses of his diabetic pills from July 19–22, 2007, and evening doses on July 20, 2007. Medical File 121. Holtzman has not contradicted these records. Any allegation that prison pharmacy officials acted with deliberate indifference by not re-ordering his

Tegretol in time for his July 19 and 20, 2007 doses is insufficient.[7]

Had Holtzman established a violation of his constitutional rights, Correct RX Pharmacy, as a mere private contractor that fills prescriptions for WCI inmates, would have no *respondeat superior* liability under § 1983 for its employees' acts. *See* Compl. 2; *Outlaw*, 2010 WL 481353, at *3 n.5; *Rodriguez*, 338 F.3d at 355. The complaint against Correct RX Pharmacy must be dismissed.

2. Dr. Tessema's Motion to Dismiss or, in the Alternative, for Summary Judgment

Holtzman alleges that Dr. Tessema knew about Holtzman's infected toe since March 2007, but "made the informed decision not to authorize or administer medical treatment." Compl. 4–5. He asserts that Dr. Tessema "knew and should have known that he did cause [Holtzman] to endure great pain without provocation." *Id.* at 7.

Dr. Tessema asserts that (1) Holtzman's claims are time-barred, and (2) he was not deliberately indifferent to Holtzman's serious medical needs. *See* ECF No. 19 at 2, 9, 18.

    a. Timeliness

Maryland's statute of limitations for personal injury torts applies to Holtzman's § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). The applicable statute of limitations is three years from the date the cause of action accrues. Md. Code Ann., Cts. & Jud. Proc. § 5-101.

Dr. Tessema asserts that because Holtzman sued on July 16, 2010, any claims for injuries suffered before July 16, 2007 are too late. ECF No. 19 at 2. Although Holtzman's toe infection developed in March 2007, he has alleged that Dr. Tessema waited to administer treatment despite

---

[7] *See, e.g., Wade v. Angelone*, No. 2:01CV174, 2003 WL 23493661, at *2, *5–*6 (E.D. Va. Apr. 8, 2003) (granting summary judgment to pharmacy nurse against a prisoner who asserted that she had not ordered his medication on time; the record did not "indicate [that] this was done purposely," and "the most that [could] be imputed to [the nurse was] negligence").

The Warden's Office has noted that the pharmacy will stock Tegretol to avoid future delays. ECF No. 23, Ex. 6 at 10.

9

knowledge of the infection. Compl. 4–5, 7. Allegations of delayed treatment may state a deliberate indifference claim under § 1983. *See, e.g., Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978). Thus, Holtzman's injury did not occur until the delay ended, which the Court assumes was the November 29, 2007 toenail removal. Medical File 78. Holtzman's claims are timely.

b. Deliberate Indifference

Because Holtzman is diabetic, the Court has assumed that his toe infection was a serious medical need.[8] However, he has not demonstrated Dr. Tessema's deliberate indifference to that need. *See Estelle*, 429 U.S. at 106. Although Holtzman has asserted that Dr. Tessema knew about his infection but did not authorize treatment, Compl. 4–5, 7, his medical records establish that he received treatment before the toenail removal, including several courses of antibiotics and other palliative care.[9] Holtzman's belief that his toenail should have been removed sooner--i.e., his disagreement with his treatment--does not establish an Eighth Amendment claim. *See Wright*, 766 F.2d at 841. Further, his records reveal that Holtzman's medication appeared to alleviate the pain at times, and he indicated the day before his initially scheduled September 27, 2007 surgery that his toe was healthy; it was not unreasonable to wait to perform surgery.[10]

---

[8] *Cf. Bowers v. City of Phila.*, No. 06-CV-3229, 2007 WL 219651, at *24 (E.D. Pa. Jan. 25, 2007) (open sore on diabetic's partially amputated toe was a serious medical need).

[9] *See, e.g.*, Medical File 19 (May 11, 2007 doxycycline and bacitracin prescriptions); *id.* at 23 (May 15, 2007 provision for basin and salts to soak toe); *id.* at 37 (June 18, 2007 Keflex prescription); *id.* at 48 (Aug. 15, 2007 wedge excision); *id.* at 54 (Sept. 1, 2007 order for saline soaks and Bactrim prescription); *id.* at 71 (Nov. 9, 2007 Bactrim prescription); *Blackburn v. South Carolina*, No. 0:06-2011-PMD-BM, 2009 WL 632542, at *11, *33 (D.S.C. Mar. 10, 2009) (granting summary judgment to prison doctors on plaintiff's deliberate indifference claim because his medical record "clearly demonstrate[d that he] received regular, comprehensive medical treatment for his ailment").

[10] *See, e.g.*, Medical File 39 (June 22, 2007 evaluation that Keflex was relieving the paronychia); Medical File 64 (Sept. 26, 2007 Carkin progress notes that Holtzman had stated his toe felt "great").

Because no reasonable jury could find that Dr. Tessema acted with deliberate indifference to Holtzman's toe infection, his motion for summary judgment must be granted.

3. Shearin's Motion to Dismiss or, in the Alternative, for Summary Judgment

Holtzman alleges that Shearin dismissed his May 5, 2007 ARP complaint, and "did not intervene on [his] behalf" when Holtzman asked for help. Supp. to Compl. 1. Shearin asserts that he did not violate Holtzman's constitutional rights, and Holtzman has not established supervisory liability. *See* ECF No. 23 at 10–11.[11]

Holtzman has not alleged that Shearin personally deprived him of a constitutional right. If he is alleging that his ARP complaint was wrongfully dismissed, a prisoner has no constitutional right to access the grievance procedure voluntarily established by the State. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).[12] Further, the ARP complaint was dismissed because the investigator noted that Holtzman's toe was being treated, and he was scheduled for a follow-up appointment. ECF No. 23, Ex. 3 at 12–14. The investigator advised Holtzman to submit sick call requests for future complaints. *Id.*

Shearin is not culpable as a supervisor. Holtzman has not shown that Shearin failed to provide prompt care, or interfered with recommended medical procedures. *See Miltier*, 896 F.2d at 854. Although Holtzman has alleged that *Dr. Tessema* was deliberately indifferent to his medical needs by delaying treatment, Compl. 4–5, 7, Holtzman has not shown that Shearin "tacitly authorized or was indifferent" to those acts. *See Miltier*, 896 F.2d at 854. Thus, Shearin's

---

[11] Shearin also asserts that Holtzman's complaint is barred under Maryland's statute of limitations. *See* ECF No. 23 at 13. However, as explained in Part II.B.2.a, Holtzman's claims are timely.

[12] *See, e.g., Lurz v. Galley*, No. AMD-07-70, 2008 WL 6507717, at *1–*2 (D. Md. Mar. 10, 2008) (prisoner's allegation that the former WCI Warden wrongfully dismissed his ARP complaint "simply [did] not implicate a constitutional claim cognizable under § 1983" (*citing Adams*, 40 F.3d at 75)).

11

motion to dismiss must be granted.

    4. CMS's Motion to Dismiss or, in the Alternative, for Summary Judgment

Holtzman alleges that CMS caused him to suffer "because of poor medical care [that he] received." Compl. 8. He alleges that after his November 29, 2007 toenail removal, he was not given bandages within 48 hours. *Id.* He also notes that an independent physician, Dr. Donovon, found WCI's management of Holtzman's diabetes erratic. *Id.* at 6; *id.*, Ex. C at 2. CMS asserts that it is a corporate entity that cannot be held liable under § 1983. ECF No. 19 at 3.

That Holtzman did not receive new bandages within 48 hours after his toenail surgery does not indicate "grossly" inadequate care.[13] At most, Holtzman has alleged negligence, which is insufficient. *See id.* at 852.[14] Further, his bandages were changed on December 4, 2007--five days after the removal--and he was then taught to change them himself. Medical File 80, 82. Nurses evaluated Holtzman's toe weekly after the surgery. Medical File 81; Tessema Aff. ¶ 15. Also, although Dr. Donovon has criticized Holtzman's diabetes management, Holtzman has not contradicted his blood tests, which establish that his diabetes remained controlled. Tessema Aff. ¶ 20; *see, e.g.*, Medical File 110.

Had Holtzman established that prison officials violated his constitutional rights, CMS as a mere private corporation that has contracted with WCI to provide medical services through its employees and agents, ECF No. 19 at 3, has no *respondeat superior* § 1983 liability; CMS's motion to dismiss must be granted. *Rodriguez*, 338 F.3d at 355; *see also Romero v. Barnett*, No. DKC-09-2371, 2010 WL 30566 28, at *3 n.9 (D. Md. Aug. 2, 2010).

---

[13] *See Miltier*, 896 F.2d at 852 (requiring a medical provider's acts to "f[a]ll so far below the enunciated standard of care that they constitute[] gross indifference actionable under § 1983").

[14] *See, e.g., Luck v. Fox*, No. 1:09cv335 (AJT/JFA), 2009 WL 1172860, at *4, *6 (E.D. Va. Apr. 28, 2009) (prisoner's allegations that officials did not help change his bandages failed to state a deliberate indifference claim; "at worst[, this was] an example of negligence").

III.   Conclusion

The extensive treatment provided to Holtzman for the infection in his toe belies his assertions that his complaints were ignored, and he was allowed to suffer needless pain. The undisputed evidence establishes that he received several courses of antibiotics and other palliative care before the wedge excision and removal of the toenail. The evidence does not show deliberate indifference to a serious medical need. For the reasons stated above, the complaint against Correct RX Pharmacy will be dismissed, and the Dr. Tessema motion for summary judgment and the Shearin and CMS motions to dismiss will be granted.

____6/2/11____  
Date

_____  
William D. Quarles, Jr.  
United States District Judge